IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL COLEMAN,<br><br>    Defendant. | Case No. 22-CR-430-JFH-17 |

## OPINION AND ORDER

Before the Court is a detention appeal ("Appeal") filed by Defendant Michael Coleman ("Defendant"). Dkt. No. 250. Defendant requests the Court reverse the decision of United States Magistrate Judge Jodi F. Jayne to detain him pending trial. The United States of America ("Government") opposes Defendant's Appeal. Dkt. No. 253. For the reasons stated, the Appeal is DENIED and Judge Jayne's detention order is AFFIRMED.

## BACKGROUND

Defendant is one of twenty (20) named defendants in an indictment alleging twenty-five (25) counts involving drug conspiracy, interstate travel to promote and facilitate unlawful activity, distribution of methamphetamine, possession of methamphetamine with intent to distribute, possession of cocaine with intent to distribute, maintaining a drug-involved premises, and possession of a firearm in furtherance of a drug trafficking crime. Dkt. No. 120. Defendant is named only in the first count, drug conspiracy. *Id.* at 5. The indictment alleges the lead defendant in the case, Juan Rangel-Ortiz ("Rangel-Ortiz"), led the conspiracy while detained in the Lawton Correctional Facility in Lawton, Oklahoma. *Id.* at 2. Rangel-Ortiz allegedly used telephones[1] to

---

[1] Rangel-Ortiz allegedly had a contraband cell phone inside prison. Dkt. No. 255 at 3.

"orchestrate the importation, transportation, and distribution of shipments of methamphetamine to Tulsa, Oklahoma," "received orders from prospective customers and directed others to deliver methamphetamine," and "controlled and coordinated the storage and distribution of drugs in the Tulsa area." *Id.*

Defendant was allegedly one of the coconspirators involved in the distribution of methamphetamine. *Id.* at 4. He was arrested on May 8, 2023 and arraigned on May 9, 2023. Dkt. No. 209; Dkt. No. 219. His detention hearing took place on May 10, 2023. Dkt. No. 216; Dkt. No. 255. At the hearing, both parties proceeded by proffer. *Id.*

The Government proffered that 231 recorded "pertinent electronic communications and one pertinent phone call" between Defendant and Rangel-Ortiz would evidence that the two communicated numerous times about Defendant retrieving methamphetamine. Dkt. No. 255 at 3-7. On November 3, 2022, after several communications between Defendant and Rangel-Ortiz, officers observed a vehicle matching Defendant's vehicle arrive at a location Rangel-Ortiz had provided to Defendant and interact with another individual. Officers then conducted a traffic stop to identify the driver of vehicle and positively identified Defendant. *Id.* at 3-4.

Defendant and Rangel-Ortiz continued to communicate after the November 3, 2022 meeting. Defendant allegedly told Rangel-Ortiz he was "ready to resupply again" and would "get six kilos to make it worth the courier's time." *Id.* at 5. At this point in the Government's proffer, Judge Jayne inquired to confirm that Defendant was stopped by law enforcement on November 3, 2022 but was not arrested and continued to communicate with Rangel-Ortiz after the stop. *Id.*

Defendant and Rangel-Ortiz communicated again on November 6, 2022, about Defendant taking possession of six kilograms of methamphetamine at $3,500 per kilogram for a total of $21,000. *Id.* at 6. More communications between the two occurred on November 11, 2022. *Id.*

at 6-7. On November 12, 2022, law enforcement observed Defendant make contact with two couriers, one at approximately 10:57 am and another at approximately 6:03 pm.[2]

Defendant proffered information about his background and living situation. *Id.* at 10. His counsel described him as a lifelong resident of Muskogee County living with his girlfriend and their four-month-old child at a residence where he has lived for one and a half years. He had self-employment raising cattle and goats but also had the opportunity to work at Wheeler Metals in Muskogee, Oklahoma, if he were released pretrial. *Id.* at 10-11. Defendant also addressed a section of his pretrial services report describing that two shotguns were found at his residence when he was arrested despite Defendant having told the Probation Office that there were no firearms at his residence. Defendant claimed that the shotguns belonged to a friend of his, Derek Smith, who had left them at Defendant's home. *Id.* at 11.

Both parties presented argument at the detention hearing regarding Defendant's criminal history. The pretrial services report lists an aged criminal history of including convictions for driving infractions in 2000, reckless driving in 2003, and accessory after the fact in the Eastern District of Oklahoma in 2003. Defendant's supervised release in his federal case was revoked for a new law violation in 2007 related to a state aggravated assault and battery charge that was later dismissed. Defendant also had a failure to appear and bench warrant issued in 2003, a trafficking in illegal drugs charge dismissed in 2013, and a domestic abuse charge dismissed in 2023.

The Government argued that Defendant's criminal history demonstrated "someone who routinely has not followed any kind of conditions that the court has set upon him." Dkt. No. 255

---

[2] The Government's proffer described that "Coleman told Ortiz he saw the courier" during the morning meeting but did not state whether law enforcement observed Defendant interact directly the courier. The Government's proffer specified that "[i]nvestigators observed Coleman meet with the [evening courier] for approximately one minute." *Id.*

at 13.  The Government also called Judge Jayne's attention to Defendant's pretrial risk assessment ("PTRA") score of 4 and Probation's recommendation that no condition or combination of conditions would reasonably assure the appearance of the defendant or safety of the community.

Defendant argued that several of the arrests in his history led to dismissed charges, not convictions, and that the convictions in his history are more than fifteen (15) years old.  He also argued that his ties to Muskogee, job opportunity, and family including a four-month-old child provide ties to the community that would "make sure he comes back and doesn't reoffend."  Dkt. No. 255 at 16.

Judge Jayne took a recess to consider the evidence and arguments.  When she returned to the bench, she first noted that the crime charged has a presumption in favor of detention.  She next found that there was enough evidence presented to rebut that presumption.  However, she ultimately ordered Defendant detained, explaining:

> The nature and circumstances of the offense here involve strong evidence of communications with Mr. Ortiz while he was in prison facilitating drug buys.  Obviously there can be questions about that and what was said, but the evidence presented in court persuades me that this is fairly strong evidence of 231 communications, three of which were specifically described for me, and resulted in a visual appearance, visual spotting by officers of this defendant in the car he described on a phone call in a transaction that's indicative of a drug buy.
>
> So the weight of the evidence as to his involvement in this conspiracy is strong.  The nature and circumstances of the offense, I agree with the government, that this amount of drugs does create a significant danger to the community in terms of being trafficked.
>
> Now, this defendant's personal history and characteristics is what made this a somewhat difficult case.  If any of these convictions were more recent, it would have been a very easy -- an easier detention case, but his priors are old as we have discussed in court today.
>
> He was, however, revoked on a case in the Eastern District, and even though that was 15 years ago, that still is -- weighs in favor of

> detention in my mind in terms of the willingness to abide by any conditions that I would impose to control the danger to the community posed by the conduct that's alleged in this case.
>
> So considering everything I do find the government has met its burden to show that there are no conditions that will reasonably control the danger to the community posed by ongoing drug -- the potential for ongoing drug trafficking.

*Id.* at 18-19.  She also noted that "even after this defendant was stopped by officers, he continued to engage in the phone calls with Mr. Ortiz and continued setting up some drug buys" and though "he wasn't aware at that time that he was under investigation, [] that played no role in stopping some of this conduct from occurring, at least allegedly, and based on what's been proffered here today." *Id.* at 20.  Judge Jayne concluded the hearing with the statement that her detention decision was not based on flight risk but on risk of danger to the community.  *Id.*

## AUTHORITY AND ANALYSIS

"If a person is ordered detained by a magistrate judge . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order."  18 U.S.C. § 3145(b).  The Tenth Circuit requires this Court to conduct de novo review of a magistrate judge's detention order.  *United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003).  A district court has the discretion to hold an evidentiary hearing if it determines that additional evidence is necessary or it may rule on the written pleadings and evidence if the factual record is sufficient.  *See id.; United States v. King*, 849 F.2d 485, 490-91 (11th Cir. 1988); *United States v. Williams*, 753 F.2d 329, 334 (4th Cir. 1985).  The Court finds that a hearing is not necessary and will, therefore, conduct its de novo review based on the record, including the parties' briefing, the transcript of the detention hearing before Judge Jayne, and the pretrial services report prepared by the United States Probation Office.

Pursuant to 18 U.S.C. § 3142(f), the Court must consider whether there are conditions or a combination of conditions that will assure the appearance of Defendant and protect the safety of any other person or the community. Section 3142 sets out four factors for the Court to consider: (1) the nature and circumstances of the charged offense; (2) the weight of the evidence; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger that would be posed by the defendant's release. *Id.* § 3142(g). "[A]pplying and weighing the relative importance of the statutory factors requires an individualized determination that necessarily differs for each defendant depending on the circumstances of the case." *United States v. Bragg*, 2021 WL 6143720, at *2 (10th Cir. Dec. 30, 2021).[3]

Judge Jayne appropriately noted that this is a presumption case because it is "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act." 18 U.S.C. § 3142(e)(3)(A). Specifically, "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed" the charged offense. *Id.* "Once the presumption is invoked, the burden of production shifts to the defendant. However, the burden of persuasion regarding risk-of-flight and danger to the community always remains with the government." *United States v. Stricklin*, 932 F.2d 1353, 1354-55 (10th Cir. 1991). "The defendant's burden of production is not heavy, but some evidence must be produced," and "[e]ven if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain." *Id.* at 1355.

---

[3] Unpublished appellate opinions are not binding precedent but may be cited for their persuasive value. *See* Fed. R. App. P. 32.1.

Here, Defendant has been charged by indictment after presentation of evidence to the grand jury. *See* Dkt. No. 120. This is sufficient for the Court to find that probable cause exists and the presumption applies. Defendant proffered evidence rebutting the presumption that he would be a flight risk: his connections to Muskogee, his family life, his employment prospects, the dated nature of his criminal history. However, he proffered no evidence to rebut the risk of danger to the community. Defendant is alleged to have transported kilograms—literally *thousands* of doses—of methamphetamine for a prison-based drug conspiracy. The nature and circumstances of this offense have inherently significant community danger.

"The concern about safety is to be given a broader construction than the mere danger of physical violence. Safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community." *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989). Specifically, "the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the safety of any other person or the community." *Id.* This Court and other district courts in the Tenth Circuit have found by clear and convincing evidence that a defendant charged with being a member of a large drug conspiracy was a danger to the community. *See, e.g., United States v. Delgado*, 599 F. Supp. 3d 1102, 1108 (N.D. Okla. 2022) (Heil, J.); *United States v. Bolivar*, 455 F. Supp. 3d 1165, 1171 (D.N.M. 2020); *United States v. Vasquez*, No. 12-20066, 2012 WL 1970362, at *4 (D. Kan. June 1, 2012). Based on the nature and circumstances of his charged conduct, Defendant has not rebutted the presumption that no conditions will ensure safety to the community should he be released.

Even if Defendant had rebutted the presumption, the Court would still reach the same decision after consideration of the § 3142(g) factors. As to the first factor, the Court could still consider the presumption as a factor weighing toward detention. *Stricklin*, 932 F.2d at 1355. As

to the second factor, the weight of the evidence would weigh toward detention. The Government proffered that over 200 electronic communications demonstrate Defendant's involvement in the alleged drug conspiracy. Defendant argues that he did not have access to discovery at the time of the detention hearing and could not therefore challenge the Government's evidence. Dkt. No. 250 at 5. But the Government primarily relied on the quantity of electronic evidence, not the specifics of it, at the detention hearing. *See* Dkt. No. 255. Additionally, the Government proffered evidence of controlled buys and law enforcement eye witnesses to Defendant's participation in the conspiracy. *Id.*

Defendant's history and characteristics are neutral because his dated criminal history weighs toward detention and his current characteristics weigh against it. Defendant has a failure to appear and a revocation of supervised release on his record. Both of those demonstrate disregard for court orders. However, as Defendant points out, these records are more than fifteen (15) years old. He had an arrest in 2022 for domestic abuse but charges were dropped and no conviction resulted. Defendant is apparently more settled now, raising livestock as a job and raising a young child with his girlfriend. He has the opportunity to work in the Muskogee community if he were released. The Court does look favorably on Defendant's desire and opportunity for employment. Nevertheless, the Court's assessment of potential benefit here is tempered by Defendant's past.

Finally, as discussed earlier regarding the nature and circumstances of the offense, the nature and seriousness of the danger that would be posed by Defendant's release is substantial. Defendant allegedly brought pounds of methamphetamine into the community at Rangel-Ortiz's direction. *See Bolivar*, 455 F. Supp. 3d at 1171 (noting that the "sheer quantity of drugs" seized made it likely that the defendant would resume trafficking if allowed on pretrial release). As Judge Jayne noted, Defendant allegedly continued this activity even after he was stopped by law

enforcement directly after he met a courier to obtain methamphetamine.  Moreover, Defendant has a 2011 arrest for trafficking in illegal drugs.  While this case was ultimately dismissed and did not lead to a conviction, it indicates a longstanding willingness to participate in the distribution of dangerous and illegal substances.  The Tenth Circuit has called district courts' attention to legislative history "emphasiz[ing] that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the safety of any other person or the community."  *Cook*, 880 F.2d at 1161 (quotations omitted).  Given these factors, and given the thousands of doses of methamphetamine Defendant allegedly transported into this judicial District, the Court finds by clear and convincing evidence that no condition or combination of conditions would protect the safety of the community.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant's detention appeal [Dkt. No. 250] is DENIED.  Judge Jayne's detention order [Dkt. No. 217] is AFFIRMED.

Dated this 20th day of June 2023.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE